Argued and submitted May 8, 2001, decision of Court of Appeals affirmed, judgment of circuit court reversed and case remanded to circuit court for further proceedings June 7, 2002

Nancy J. STORM,
Personal Representative for the Estate of
Jon E. Storm, Deceased,
*Respondent on Review /
Petitioner on Review,*

*v.*

Rick McCLUNG,
*Respondent on Review,*

*and*

CITY OF OREGON CITY,
a municipal corporation,
*Petitioner on Review /
Respondent on Review.*

(CCV9605004; CA A99618; SC S47680, S47713)

47 P3d 476

Robert E. Franz, Jr., Springfield, argued the cause for petitioner on review/respondent on review City of Oregon City. With him on the briefs were Kathryn D. Piele and Michael O. Whitty.

W. Eugene Hallman, of Hallman & Dretke, Pendleton, argued the cause and filed the briefs for respondent on review/petitioner on review Storm.

No appearance on behalf of respondent on review McClung.

Maureen Leonard and Kathryn H. Clarke, Portland, filed briefs on behalf of *amicus curiae* Oregon Trial Lawyers Association.

David L. Runner, Salem, filed a brief on behalf of *amici curiae* SAIF Corporation, Pape Group, Inc., and Timber Products Company.

Marjorie A. Speirs and Janet M. Schroer, of Hoffman, Hart & Wagner, LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.**

DE MUNIZ, J.

---

** Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case. Balmer, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, J.

Plaintiff, the widow of Jon Storm and the personal representative of his estate, brought this wrongful death action, under ORS 30.020 against the City of Oregon City (the city) for the benefit of Storm's mother, Myrtha Storm, and his daughters, Sonia and Tami Storm. A jury found that Storm and the city were each 50 percent negligent in causing Storm's death and awarded damages. In accordance with ORS 30.050, the trial court entered a judgment for plaintiff that apportioned the damages between Storm's mother and daughters. The city appealed. The Court of Appeals held that Storm's daughters each had received a substantial remedy under the Workers' Compensation Law and, therefore, plaintiff was not entitled to any recovery on their behalf. Because the Court of Appeals concluded that plaintiff was not entitled to a recovery on behalf of her daughters, the court reversed the judgment and remanded the case for a retrial limited to assessing damages on behalf of Storm's mother. *Storm v. McClung*, 168 Or App 62, 64-69, 4 P3d 66 (2000). We allowed each party's petition for review.

We take the following facts from the opinion of the Court of Appeals:

"Storm was an employee of Bud's Towing, an Oregon City business owned by Del Bullock. Bullock was active in civic affairs, at times loaning his business equipment and employees for city projects. Storm was similarly involved; among other things, he was a member of the Arbor Day Clean Up Committee, which Rick McClung, the City's director of public works, chaired. The members of the committee other than McClung were, like Storm, volunteers interested in the 'beautification and enhancement of the city.'

"Storm died on May 4, 1994, in the process of an Arbor Day project at the City's Clackamette Park, which is located at the confluence of the Clackamas and Willamette rivers. The city wanted to top a number of cottonwood trees in the park, both because the trees were potentially dangerous and to create nesting sites for birds. It had previously paid a professional tree service to fell a number of trees in the

park; city employees did not believe that they were qualified to do the work safely. The jury could have found that topping a tree is more dangerous than felling it. A city employee examined the trees in April 1994 and identified six that were particularly dangerous because of their location and condition. The City knew from the employee's written report that tree 'F' contained rotten wood, which increases the dangerousness of a cottonwood. McClung suggested that the Arbor Day committee include topping those six trees among the projects for its spring clean-up period, which ran for several weeks in May and June. If the City had been unable to find volunteers, either through the committee or otherwise, it would again have hired a contractor; its own employees would not have done the job.

"Storm was one of the volunteers who worked on topping the trees. Bud's Towing provided equipment for use on the job. Bullock was present for only a small part of the time, but Storm participated throughout the day. The equipment that Bud's Towing provided included a crane that had a bucket at one end; of those present, only Storm and Bullock were qualified to operate it. Michael Huffman, the person cutting the trees, stood in the bucket 30 feet above the ground in order to top the trees. Storm did not originally do any of the cutting because he had to operate the crane. After the group successfully topped several trees, it turned to tree 'F.' After Huffman had cut a significant distance through the trunk of that tree, the top began to move toward him, rather than away from him. The movement ultimately trapped the saw within the cut. Huffman shut off the saw, and the group spent about an hour discussing what to do next. Bullock arrived during the discussion.

"The group ultimately decided that Storm would go up in the bucket, at least to retrieve the saw and see exactly what the situation was, while Bullock operated the crane. Storm went up, pounded wedges into the saw cut, and freed the saw. Instead of coming down at that point, he started the saw and attempted to finish topping the tree. The top again moved toward the saw rather than away from the crane, but this time it came completely down. In doing so, the top knocked the crane off the truck, threw Storm out of the bucket, and landed on top of him. Storm died soon afterwards. City employees observed and videotaped the entire proceedings, but they were not involved in the decisions

and did not warn Storm or anyone else of the dangers that the trees presented.

"The jury found that Storm and the City were each 50 percent negligent in causing Storm's death. * * * The jury then determined that the estate's economic damages were $147,923 and that its noneconomic damages, on behalf of Tami, Sonia and Myrtha, were $400,000. In accordance with the jury's finding of comparative fault, the court entered judgment against the City for $73,961.50 in economic damages and $200,000 in noneconomic damages. It thereafter entered an order of distribution under ORS 30.050, apportioning economic damages of $24,653.83 each to Sonia and Tami and $24,653.84 to Myrtha, and noneconomic damages of $75,000 each to Sonia and Tami and $50,000 to Myrtha."

168 Or App at 64-66 (footnote omitted).

On review, plaintiff relies on this court's decision in *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994), and contends that, as applied to Storm's daughters, the immunity provisions in ORS 30.265(3)(a)[1] violate Article I, section 10, of the Oregon Constitution,[2] because the workers' compensation benefits that the daughters received are not a "substantial" remedy. The city asserts that the trial court erred in submitting plaintiff's specification of negligence to the jury, that the Court of Appeals decision with regard to Storm's daughters is correct and that, in any event, the Recreational Land Act, *former* ORS 105.655 to ORS 105.680 (1971), *repealed by* Oregon Laws 1995, chapter 456, section 9, and the Woodcutting Act, *former* ORS 105.685 to ORS 105.697 (1979),

---

[1] ORS 30.265(3)(a) provides, in part:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598, are immune from liability for:

"Any claim for injury to or death of any person covered by any workers' compensation law."

[2] Article I, section 10, of the Oregon Constitution, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

*repealed by* Oregon Laws 1995, chapter 456, section 9, completely immunized the city. Therefore, the city contends that the Court of Appeals incorrectly ordered a retrial to determine Storm's mother's damages.

We reject at the outset, for the reasons that the Court of Appeals expressed, the city's argument regarding the sufficiency of the evidence and the city's argument that the immunity provisions in the Recreational Land Act or the Woodcutting Act apply in this case. 168 Or App at 66-67. We turn to plaintiff's argument.

Relying on this court's decision in *Neher*, plaintiff contends that application of the immunity provisions in ORS 30.265(3)(a) denied her daughters a remedy in violation of Article I, section 10, of the Oregon Constitution. The Court of Appeals rejected that argument on the ground that, unlike the decedent's parents in *Neher*, who had received only burial expenses under the Workers' Compensation Law, plaintiff's daughters each had received death benefits and were entitled to an additional $215 for every month that they attend college. That court concluded that, because those benefits were "substantial," *Neher* was distinguishable and the application of "ORS 30.265(3)(a) to Sonia and Tami [did] not violate Article I, section 10." 168 Or App at 74.

■ We need not decide whether the Court of Appeals correctly concluded that *Neher* was distinguishable on the basis that the workers' compensation benefits that Sonia and Tami received were "substantial." Rather, for the reasons that follow, we reject plaintiff's argument that Article I, section 10, prohibits application of the immunity provisions in ORS 30.265(3)(a) to plaintiff's *statutory* wrongful death action.

We begin with *Neher*. In that case, the decedent had been hit and killed by a Tri-Met bus while crossing the street. The decedent's estate received workers' compensation benefits (limited to burial expenses) because, at the time of the accident, the decedent was in the course and scope of her employment. Her father, as personal representative of the estate, also brought a statutory wrongful death action against Chartier, the bus driver, and his employer, Tri-Met. The trial court granted the defendants' motion for summary

judgment, concluding that ORS 30.265(3)(a) provided the defendants with immunity from the plaintiff's wrongful death action.

The decedent's father appealed, arguing that ORS 30.265(3)(a) effected the denial of a remedy for his daughter's death and, therefore, violated Article I, section 10. The defendants responded that Article I, section 10, "applies only to rights established at common law, * * * and that wrongful death is a statutory, not a common law, remedy." *Neher v. Chartier*, 124 Or App 220, 223, 862 P2d 1307 (1993). Therefore, the defendants argued, the legislature could limit or even eliminate entirely the wrongful death cause of action. The Court of Appeals affirmed, on different grounds, applying this court's reasoning in *Hale v. Port of Portland*, 308 Or 508, 783 P2d 506 (1989). *Hale* explained that the legislature may alter or limit a cause of action "so long as the party injured is not left entirely without a remedy." *Id.* at 523. The remedy provided, explained the *Hale* court, simply must be "substantial." *Id.* Thus, the Court of Appeals in *Neher*, relying on *Hale*, concluded that, although $3,000 may be a small amount, the court could not say that the plaintiff was denied a substantial remedy.

On review, this court reversed, holding that ORS 30.265(3)(a) violated Article I, section 10, because the provision insulated the defendants from liability to the decedent's parent while, at the same time, the wrongful death statute recognized the existence of a right of recovery for surviving parents. *Neher*, 319 Or at 428. The court began the *Neher* opinion by observing that "[t]his court's case law * * * interpreting Article I, section 10, * * * ha[d] failed definitively to establish and consistently to apply any one theory regarding the protections afforded by the remedies guarantee." *Id.* at 423. The court then noted that it had summarized the application of Article I, section 10, to governmental bodies in *Hale*, which, relying on *Noonan v. City of Portland*, 161 Or 213, 249-50, 88 P2d 808 (1939), had explained that, " 'Article I, § 10, Oregon Constitution, was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static. * * * The legislature cannot, however, abolish a remedy and at the same time recognize the existence of a right[.]' " *Neher*, 319 Or at 423-24. This

court observed that it had stated in *Hale* that Article I, section 10, "is not violated when the legislature alters (or even abolishes) a cause of action, so long as the party injured is not left entirely without a remedy." *Id.* at 424. That remedy, however, must be a "substantial one." *Id.*

This court then discussed the application of Article I, section 10, to public bodies. The court first observed that, in *Mattson v. Astoria*, 39 Or 577, 65 P 1066 (1901), the court had held that a city's attempt to immunize all employees from liability for defective conditions of roadways violated Article I, section 10. *Neher*, 319 Or at 425. The *Mattson* court had concluded that the legislature could limit the city's liability, but the injured party must be allowed to proceed against the person whose job it was to keep the streets in repair. The *Neher* court inferred that the premise of *Mattson* was to avoid leaving the plaintiff without a remedy. *Neher*, 319 Or at 425. The court noted that *Batdorff v. Oregon City*, 53 Or 402, 100 P 937 (1909), supported a similar conclusion. The court thus concluded that "legislation extending tort immunity to public officers and employees * * * violates Article I, section 10, if the effect of the immunity provisions is to render tort plaintiffs 'without remedy.' " *Neher*, 319 Or at 426.

The *Neher* court then applied that conclusion to the decedent's father by observing that, although the decedent's estate recovered the remedy to which it was entitled under the workers' compensation law, the estate was "not the only real party in interest in the wrongful death action." *Id.* Under the wrongful death statute, the court observed, the decedent's parents were entitled to recover damages that might compensate them for "pecuniary loss and for loss of the society, companionship and services of the decedent." *Id.* Thus, the court observed that, although the estate had not been left without a remedy, the plaintiff, as a surviving parent, had no remedy.

As they had in the Court of Appeals, the defendants in *Neher* argued that there was no violation of Article I, section 10, because the constitutional provision protected only rights that existed at common law before the adoption of the Oregon Constitution. They argued that, because there was no

common-law right of action for wrongful death, Article I, section 10, did not protect such a cause of action. This court, although acknowledging that there was no right of action for wrongful death recognized at common law, nevertheless, construed *Noonan* as having rejected that notion:

> "In *Noonan*, this court recognized the legislature's ability to change the law, and in fact to abolish entirely a right of action, whether or not the right involved had existed at common law at the time of the Oregon Constitutional Convention. In substance, *the distinction between a statutory claim and a common law claim was abandoned for purposes of Article I, section 10, analysis.* The legislature's ability to make such alterations to rights of action, however, was not unfettered: *it could not 'abolish a remedy and at the same time recognize the existence of a right.'* "

*Neher,* 319 Or at 427-28 (emphasis added; footnote omitted). Consistent with *Noonan,* the court determined that the wrongful death statute recognized the existence of a right of recovery for surviving parents, but that the Tort Claims Act abolished the parents' remedy against the municipality and its negligent employees. Therefore, the court concluded that ORS 30.265(3)(a) violated Article I, section 10, in that case, because it left the plaintiff without a remedy.

After *Neher,* this court decided two other cases that addressed a cause of action for wrongful death within the context of Article I, section 10. In *Greist v. Phillips,* 322 Or 281, 906 P2d 789 (1995), the plaintiff, as personal representative of her son's estate, brought a statutory action for wrongful death. A jury awarded the plaintiff a substantial sum in both economic and noneconomic damages. Under ORS 18.560, however, the trial court modified the award of noneconomic damages from $1.5 million to $500,000. The plaintiff appealed, challenging the application of ORS 18.560.[3] The plaintiff argued, *inter alia,* that the application

---

[3] ORS 18.560 provides:

"(1) Except for claims subject to ORS 30.260 to 30.300 and ORS chapter 656, in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000.

of ORS 18.560 violated Article I, section 10, of the Oregon Constitution.

This court, citing *Neher* and *Hale*, reiterated and affirmed the court's previous conclusion that "Article I, section 10, is not violated when the legislature alters (or even abolishes) a cause of action, so long as the party injured is not left entirely without a remedy." *Id.* at 290. The court then observed that "the legislature is entitled to amend the amount of damages available in a statutory wrongful death action without running afoul of Article I, section 10, as long as the plaintiff is not left without a substantial remedy." *Id.* The court concluded that $500,000 was a substantial remedy and that ORS 18.560 did not violate Article I, section 10. Although discussing another section of the Oregon Constitution, the court in *Greist* also observed that the right of action for wrongful death is purely statutory and that there was no right of action for wrongful death at common law. *Greist*, 322 Or at 294. Therefore, the court explained, "[b]ecause wrongful death actions are 'purely statutory,' they 'exist only in the form and with the limitations chosen by the legislature.' " *Id.*

Later in *Kilminster v. Day Management Corp.*, 323 Or 618, 919 P2d 474 (1996), the plaintiff, relying on *Neher*, argued that the exclusivity provision of the workers' compensation law did not preclude an action for wrongful death and that, if read to do so, it would violate Article I, section 10.

---

"(2) As used in this section:

"(a) 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less.

"(b) 'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment.

"(3) This section does not apply to punitive damages.

"(4) The jury shall not be advised of the limitation set forth in this section."

After addressing the scope and contours of the Workers' Compensation Law, the court observed that the derivative nature of an action for wrongful death under ORS 30.020 limited the plaintiff's right to bring the claim:

"ORS 30.020(1) provides a decedent's representative with the right to bring a wrongful death action only *'if the decedent might have maintained an action had the decedent lived.'* A decedent who is injured in the course of the decedent's employment and whose injury is covered under the exclusivity provision of the Workers' Compensation Act could not have maintained an action against the employer had he lived. * * * ORS 30.020(1), by its own terms, does not give a decedent's personal representative a right to sue the decedent's employer for negligent wrongful death when the decedent never had that right in the first place."

*Id.* at 624-25 (emphasis in original; footnote omitted).

This court then responded to the plaintiff's claim that the Workers' Compensation Law violated Article I, section 10, by "taking away" the parents' claim for the wrongful death of their son. The court, citing *Noonan*, reaffirmed the principle that the legislature cannot abolish a remedy and at the same time recognize the existence of a right. However, the court explained, "[b]ecause the legislature has chosen not to provide decedent's parents with a wrongful death action based on a theory of negligence, and because Oregon has no common law action for wrongful death, * * * [the parents] have suffered no legally cognizable injury to their person, property, or reputation." *Id.* at 627.

In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), this court acknowledged the observation in *Neher* that this court previously had failed definitively to establish and consistently apply any one theory regarding the protections afforded by the remedies guarantee. *Id.* at 90. The court therefore examined the origins and meaning of the "remedy clause" of Article I, section 10. The court explained that "the word 'remedy' refers both to a remedial process for seeking redress for injury and to what is required to restore a right that has been injured." *Id.* at 124. The court also explained that the history of the remedy clause in Article I, section 10, indicated that its purpose was to protect "absolute

*[common-law] rights* respecting person, property, and reputation." *Id.* (emphasis added).

*Greist, Kilminster*, and *Neher* recite that there was no right of action for wrongful death at common law in Oregon. Plaintiff's counsel has presented this court with research that counsel contends establishes that a common-law action for wrongful death is legally cognizable in Oregon's courts and that the Oregon courts should have acknowledged a common-law action for wrongful death since Oregon's statehood.[4] That question, however, is beside the point in this case. Plaintiff never has alleged or asserted at any stage of these proceedings that the instant action for recovery for death is a common-law one. Rather, plaintiff always has maintained that the action is one brought under ORS 30.020. Because plaintiff's claim is a statutory one, the legislature may limit the action as it chooses.

In *Neher*, the court, relying on *Hale* and *Noonan*, assumed that Article I, section 10, afforded protection to any recognized cause of action regardless of whether that cause of action existed at common law or was legislatively created. As

---

[4] This court previously has been apprised of the questionable premise underlying the widely held view that there was no common-law action for wrongful death. The court acknowledged as much when it addressed the history of wrongful death actions in Oregon in *Goheen v. General Motors Corp.*, 263 Or 145, 150-51, 502 P2d 223 (1972). In *Goheen*, the court first pointed out Prosser's criticism of *Baker v. Bolton*, 1 Camp 493, 170 Eng Rep 1033 (Nisi Prius 1808), the first case to declare that no civil right of action for damages for the death of another could stand:

"* * * Lord Ellenborough, whose forte was never common sense, held without citing any authority that a husband had no action for loss of his wife's services through her death, and declared in broad terms that 'in a civil court the death of a human being could not be complained of as an injury.'"

*Goheen*, 253 Or at 150-51. The court then observed:

"Meanwhile, the American courts allowed recovery for wrongful death. In 1848, however, the Massachusetts Supreme Court in *Carey v. Berkshire R.R. Co.*, ignored earlier decisions by American courts to the contrary and cited and adopted the rule as stated in *Baker v. Bolton*. Since then most American courts, including this court, have adopted the rule holding that there is no common law cause of action for wrongful death."

*Id.* at 151 (footnotes omitted). To compensate for the lack of a common-law right of action for wrongful death, Lord Campbell's Act was adopted in England, and the states followed suit by adopting similar statutes. *Id.* at 153. The original Oregon Wrongful Death Act was included in the original Deady Code of 1862. Since at least 1891, this court has adhered to the view that no right of action for wrongful death existed at common law. *See Putman v. Southern Pacific Co.*, 21 Or 230, 231-32, 27 P 1033 (1891) (so stating).

the foregoing analysis demonstrates, that assumption was incorrect. The holding in *Neher* that the immunity provisions in ORS 30.265(3)(a) that barred the plaintiff's statutory wrongful death action denied the plaintiff a remedy in violation of Article I, section 10, was error and is disavowed. *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 11 P3d 228 (2000) (setting out criteria necessary for court to reconsider previous ruling under Oregon Constitution).

■      ORS 30.020(1) allows a decedent's personal representative to bring an action for wrongful death on behalf of surviving children and parents "if the decedent might have maintained an action, had the decedent lived, against the wrongdoer[.]" As this court observed in *Kilminster*, the wrongful death statute places a decedent's personal representative in the decedent's shoes, imputing to the personal representative whatever rights, and limitations to those rights, that the decedent possessed. *Kilminster*, 323 Or at 624-25.

■      Plaintiff, therefore, could bring a statutory action for wrongful death against the city only if Jon Storm could have brought such an action against the city had he lived. ORS 30.265(3)(a) insulates from liability "[e]very public body and its officers, employees and agents acting within the scope of their employment or duties" for "[a]ny claim for injury to or death of any person covered by any workers' compensation law." Storm was covered by workers' compensation. Thus, ORS 30.265(3)(a) would have barred Storm from bringing a negligence-based action against the city for his injuries, had he survived. Likewise, plaintiff's statutory wrongful death action is barred by the same immunity provisions. It follows that the Court of Appeals' dismissal of plaintiff's statutory wrongful death action on behalf of her daughters was correct. However, because the city never has argued at any stage of the proceedings that a claim on behalf of Storm's mother was barred by ORS 30.265(3)(a), we leave in place the Court of Appeals' disposition as to that part of the wrongful death claim.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.