No. 79          February 11, 2026          37

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ESTATE OF JAMES RITCHIE,
by and through its Personal Representative Allison Ritchie,
*Plaintiff-Appellant,*

*v.*

Edward HELBIG,
Michael Sauls, and Strike a Cord,
Limited Liability Company,
*Defendants-Respondents,*

*and*

Leonard BRITTNER et al.,
*Defendants.*

Multnomah County Circuit Court
19CV14211; A181405

Andrew M. Lavin, Judge.

Argued and submitted December 4, 2024.

Travis Eiva argued the cause and filed the briefs for appellant.

Jonathan Henderson argued the cause for respondents Michael Sauls and Strike a Cord Limited Liability Company. Also on the brief were Davis Rothwell Earle & Xóchihua, P.C.

No appearance for respondent Edward Helbig.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this wrongful death action, plaintiff appeals and assigns error to the trial court's ruling that reduced plaintiff's jury-awarded noneconomic damages of $2,108,412 down to the statutory maximum of $500,000 set by ORS 31.710(1). In support of their appeal, plaintiff argues that the remedy cap on noneconomic damages, as applied to wrongful death actions, violates the remedy clause of Article I, section 10, and the right to a jury trial provided by Article I, section 17, of the Oregon Constitution. This is the first time we have reviewed ORS 31.710(1) for a remedy clause violation since the statute was amended by the Oregon legislature following the Supreme Court's decision in *Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 468 P3d 419 (2020). Having reviewed *Busch* and other relevant case law, we have determined that ORS 31.710(1) does not violate Article I, section 10, nor Article I, section 17. Therefore, the trial court did not err in its judgment reducing plaintiff's noneconomic damages award to the maximum set by that provision. We therefore affirm.

BACKGROUND

Plaintiff is the personal representative of the estate of James Ritchie, who was killed in a vehicle collision. Ritchie was riding a motorcycle in Portland when he accelerated to around twice the speed limit of 35 miles per hour in the distance of one city block. As Ritchie sped westbound through an intersection, defendant Edward Helbig was turning a U-Haul truck left from the eastbound lanes into the parking lot of a U-Haul rental facility. Defendant Michael Sauls, owner of Strike a Cord LLC, ("Sauls") was traveling east and entered the center turn lane east of where the collision occurred, obscuring the view between Ritchie and Helbig. Ritchie collided with the passenger side of the U-Haul truck at a high rate of speed and died as a result of the collision.

At trial, the jury allocated fault for the crash as follows:

Ritchie:   46%

Helbig:   40%

Sauls:   14%

A fourth party was found to have been at no fault. The jury awarded $2,891,588 in economic damages and $2,108,412 in noneconomic damages, for a total award of $5,000,000. Post-verdict, Sauls argued for the trial court to reduce the noneconomic damages award to $500,000 pursuant to ORS 31.710(1). The trial court agreed and entered a judgment ordering the reduction, bringing the total remedy to $3,391,588, subject to fault allocation. It is that ruling to reduce noneconomic damages that is the subject of this appeal.

Plaintiff first argues that ORS 31.710(1), capping noneconomic damages for wrongful death claims at $500,000, violates Article I, section 10. Plaintiff argues that the provision substantially limits a core interest in recovery for injuries caused by the negligent acts of another without furthering a sufficiently important governmental interest. Defendant replies that Article I, section 10, does not prohibit remedy caps placed on statutory claims, such as claims for wrongful death. Rather, Article I, section 10, imposes a limit on the legislature's power to limit or remove a remedy for common law claims. Wrongful death actions, the defendant argues, are and have always been statutory claims subject to a remedy cap. Defendant argues that the Supreme Court already held that the wrongful death remedy cap is constitutional when it decided *Greist v. Phillips*, 322 Or 281, 906 P2d 789 (1995). The parties dispute whether the decision in *Greist* still controls after the court decided *Horton v. OHSU*, 359 Or 168, 175-221, 376 P3d 998 (2016), which created a new framework for evaluating laws under the remedy clause. This is the first opportunity we have had to assess whether the *Greist* decision holds up under the *Horton* and *Busch* analysis.

Plaintiff next argues that the remedy cap provision violates Article I, section 17. Plaintiff argues the right to a jury trial should be read to protect more than the procedural right to have a case heard by a jury; it should also protect parties' substantive right to the remedy prescribed by the jury. In advancing that argument, plaintiff urges us to overrule the Supreme Court's ruling on the issue in *Horton*. 359 Or at 250 (holding that Article I, section 17, guarantees

a procedural right to have a jury decide the facts in customarily recognized common-law claims and defenses and those "of like nature," but does not "impose[] a substantive limit on the legislature's authority to define the elements of a claim or the extent of damages available for a claim").

We review whether the trial court's application of ORS 31.710(1) violates Article I, section 10, or Article I, section 17, as a matter of law. *See generally Busch*, 366 Or 628; *Horton*, 359 at 175-221. Where there is clear Supreme Court precedent on an issue, we are bound by that precedent. *State v. Finlay*, 257 Or App 581, 586 n 2, 307 P3d 518, *rev den*, 354 Or 389 (2013); *State v. Depeche*, 242 Or App 155, 161 n 8, 255 P3d 502 (2011). Because *Horton* unequivocally determined that remedy caps do not violate Article I, section 17, we conclude without further discussion that the trial court did not err on that basis when it granted the remedy reduction. *Horton*, 359 Or at 250.

We now turn to the parties' dispute over the application of Article I, section 10, to wrongful death remedies allowable under ORS 31.710(1). Article I, section 10, with the remedy clause italicized, reads:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and *every man shall have a remedy by due course of law for injury done him in his person, property, or reputation*."

The remedy clause, unlike the right to a jury trial, has been read to protect a substantive right to remedy for injuries rather than a merely procedural right. *Horton*, 359 Or at 180; *Busch*, 366 Or at 645.

To provide context for the parties' arguments, we begin with a brief overview of recent remedy clause jurisprudence.[1] We begin with *Horton*, in which the court attempted to provide a framework within which to assess legislation for violations of the remedy clause after it overruled *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001). In *Smothers*, the court had limited the application of remedy

---

[1] For a more complete review of remedy clause jurisprudence and its historical basis, see *Horton*, 359 Or at 175-221.

clause protection to the category of claims that were cognizable under Oregon common law in 1857. 332 Or at 124. In *Horton*, the court decided that it had been wrong in establishing such a limitation. 359 Or at 183-188. The remedy clause protection is not limited to common law claims as recognized in 1857, and the legislature may alter common-law duties and the remedies available for a breach of those duties. *Id.* at 219.

The court then established a new framework to assess legislation that seeks to limit jury-awarded remedies. The court acknowledged that it is not easy to reduce the remedy clause analysis to a simple formula because the types of legislation that give rise to challenges "do not reflect a single legislative goal or method for achieving that goal." *Id.* at 220. Nonetheless, the court stated that "common-law causes of actions and remedies provide a baseline for measuring the extent to which subsequent legislation conforms to the basic principles of the remedy clause—ensuring the availability of a remedy for persons injured in their person, property, and reputation." *Id.* at 218. It determined that, "in deciding whether the legislature's actions impair a person's right a remedy under [the remedy clause], we must consider the extent to which the legislature has departed from the common-law model measured against its reasons for doing so." *Id.* at 220.

The court then identified three categories of legislation that implicate the remedy clause, each resulting in a slightly different analysis:

> (1)  Those in which the legislature has not altered defendants' common-law duty but has either denied or limited the remedy available for injuries resulting from a breach of that duty. Complete denial of remedy or the provision of an insubstantial remedy violates the remedy clause.

> (2)  Those in which the legislature has "adjust[ed] a person's rights and remedies as part of a larger statutory scheme that extends benefits to some while limiting benefits to others," sometimes referred to as a *quid pro quo*, in which the court determines if the reduced benefit is "substantial in light of the overall statutory scheme."

> (3)  Those in which the legislature has modified common-law duties or eliminated a common-law cause of

action when the underlying premises have changed, in which the court measures the legislature's reason for the change against the extent to which it has departed from the common law, including "whether the common-law cause of action that was modified continues to protect core interests against injury to persons, property, or reputation."

*Id.* at 219-221. As a final step, courts should review the amount recovered to ensure that it is constitutionally adequate. *Busch*, 366 Or at 644; *Horton*, 359 Or at 221 ("[T]he legislative remedy need not restore all the damages that the plaintiff sustained to pass constitutional muster but a remedy that is only a paltry fraction of the damages that the plaintiff sustained will unlikely be sufficient." (Internal citation omitted.)). However, the relative size of the plaintiff's award does not "solely, or even significantly," determine the constitutionality of a damages cap itself. *Busch*, 366 Or at 644.

At issue in Horton was a challenge to the remedy cap under the Oregon Tort Claims Act (OTCA). The court categorized the OTCA as falling into the second category of legislation because, by waiving the state's sovereign immunity, the statutory scheme extends to plaintiffs a cause of action against a state entity, providing a solvent defendant that would not otherwise be available for injuries resulting from the negligence of state employees. Horton, 359 Or at 221-23. Recognizing the quid pro quo, the court then assessed whether the remedy provided was "substantial in light of the overall statutory scheme" and found that it was. Id. at 223-25. The court explicitly limited its decision to the circumstances of the case and expressed "no opinion on whether other types of damages caps, which do not implicate the state's constitutionally recognized interest in sovereign immunity and which are not part of a similar quid pro quo" complied with the remedy clause. Id. at 225.

In *Busch*, the court applied the *Horton* analysis in reviewing the constitutionality of ORS 31.710(1) (2019), *amended by* Or Laws 2021, ch 478, as applied to common law personal injury claims.[2] The court determined that the

---

[2] ORS 31.710(1) (2019), provided:

"Except for claims subject to ORS 30.260 to 30.300 and ORS chapter 656, in any civil action *seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage* of any one person

damages cap, applied to personal injury claims, violated the remedies clause. *Busch*, 366 Or at 652. In making its determination, the court situated ORS 31.710(1) (2019) under the first category of legislation identified by *Horton*—legislation that "did not alter the common-law duty of reasonable care" and "did not alter a plaintiff's common-law right to bring a claim for breach of that duty." *Id.* at 650. That is, individuals were still liable for injuries caused by their negligent acts— just as they were at common law—and those injured had the same cause of action available to them under the statute as that available under the common law. The court concluded that the legislature's intent in passing ORS 31.710(1) (2019) was to reduce tort litigation and insurance costs, a benefit "intended to inure to society in general as opposed to injured persons in particular." *Busch*, 366 Or at 651. The court determined that such reasoning fell short of the weighty importance of the kind justifying the OTCA remedy cap at issue in *Horton*, which the court described as having "constitutional underpinnings." *Id.*

That brings us to the case before us. Following the decision in *Busch*, the legislature amended ORS 31.710(1) in an effort to comport with the holding in that case. The new version of ORS 31.710(1) places a cap on noneconomic damages in wrongful death actions only, whereas the former version applied to personal injury actions, as well.[3]

Plaintiff asserts that the remedy clause applies to wrongful death claims because *Horton* allowed for evolving protections beyond cognizable common law claims in 1857, that remedies arising out of death from the negligent acts of another are "core interests" that would likely be recognized by contemporary common law, and thus that any reduction

---

including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."

(Emphasis added to show subsequently amended language.)

[3] The current version of ORS 31.710(1) reads:

"Except for claims subject to ORS 30.260 to 30.300 and ORS chapter 656, in any civil action *for the wrongful death* of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages*, as defined in ORS 31.705,* shall not exceed $500,000."

(New text italicized.)

in available remedies must reflect a "sufficiently weighty" governmental interest, likely meaning that it has "constitutional underpinnings."

Defendant replies that the remedy clause does not prohibit the legislature from placing a cap on noneconomic damages arising from statutory wrongful death actions. Defendant acknowledges that *Horton* allowed for the evolution of common law claims that are afforded remedy clause protection and that *Busch* invalidated the previous version of ORS 31.710(1) as it applied to common law personal injury claims. However, defendant asserts that the decisions in *Busch* and *Horton* do not alter the holding in *Greist*, that the cap on noneconomic damages recoverable in statutory wrongful death actions is constitutional. We agree with defendant.

In overruling *Smothers*, the court in *Horton* reaffirmed all pre-*Smothers* cases and warned that all post-*Smothers* cases should be read "with a grain of salt" to the degree that they relied on the former brightline rule that the remedy clause only protected damages for common law claims as recognized in 1857. *Horton*, 359 Or at 218, 220. *Greist* is one pre-*Smothers* case that the court reaffirmed in *Horton*. In *Greist*, the plaintiff, a representative of the estate of the decedent, had brought a wrongful death claim under ORS 30.020. *Greist*, 322 Or at 290. As the court noted in *Busch*, in *Greist* the court assessed the wrongful death cap for compliance with the remedy clause without considering whether there was a *quid pro quo* of the type provided in the OTCA. *Busch*, 366 Or at 641. The court did, however, observe "that a wrongful death action is a statutory claim that was not cognizable at common law and that it always had been subject to a damages cap." *Id.* at 641-42; *Greist*, 322 Or at 291, 294-96.[4] As such, the court reasoned, the legislature was entitled to limit the available damages so long as plaintiffs were not left without substantial remedy. *Greist*, 322 Or at 290. Considering the historical context of limits on recovery in statutory wrongful death claims, the court

_____

[4] From 1862 until 1967, statutory wrongful death claims were subject to a cap on the total recovery available to plaintiffs. Following a twenty-year period from 1967-1987, during which the legislature had removed the remedy cap, it was reinstated to apply only to noneconomic damages.

found that the total recovery allowed by the cap on noneconomic damages was sufficiently "substantial" to withstand a remedy clause challenge. *Id.* at 291.

We note that the court in *Busch* expressly declined to overrule *Greist*, just as it had in *Horton*. *Busch*, 366 Or at 643. The court also determined that *Greist* did not control the remedy clause analysis of ORS 31.710(1) in the context of common law personal injury claims, distinguishing between those types of claims and the statutory wrongful death claim at issue in *Greist*. *Id.* at 641-42; *see also Crandall v. State of Oregon*, 374 Or 699, 710-11, ___ P3d ___ (2026) (distinguishing the remedy cap provision at issue in *Busch* from that at issue in *Greist*). Insofar as the court in *Busch* said anything about the relationship between *Greist* and *Horton*, it was that *Greist* was decided consistently with *Horton* in that it could not be read to say that the amount or relative size of the plaintiff's recovery was solely determinative of the constitutionality of the damages cap. *Busch*, 366 Or at 642-43 ("To take a stroke in that direction * * * would be to swim against the tide of *Horton*."); *Crandall*, 374 Or at 711. Rather, the court pointed out that in *Greist* it had decided that the remedy was substantial based not only on the amount of the final award but also on the historical context of low caps on recovery in statutory wrongful death actions. *Busch*, 366 Or at 643.

Having reviewed *Greist*, *Horton*, and *Busch*, we conclude that *Greist*'s decision that wrongful death remedy caps do not violate Article I, section 10, is consistent with the *Horton* framework. Under *Horton*, we are to assess legislation to determine the "extent to which the legislature has departed from the common-law model measured against its reasons for doing so." *Horton*, 359 Or at 220. The court in *Busch*, in the context of personal injury claims, situated ORS 31.710(1) within the first category identified by *Horton* because the statute did not alter the common law duty of care that defendants owe plaintiffs. *Busch*, 366 Or at 640, 652. By contrast, in *Greist*, the Supreme Court emphasized that wrongful death claims have long been statutory claims subject to limited remedies. *Greist*, 322 Or at 291, 294; *see also Storm v. McClung*, 334 Or 210, 222, 47 P3d 476 (2002)

("[B]ecause plaintiff's [wrongful death] claim is a statutory one, the legislature may limit the action as it chooses."). We understand ORS 31.710(1) as it now exists to be more similar to the *quid pro quo* provided by the OTCA and found to be constitutionally sound in *Horton* than to the former limitation on personal injury damages at issue in *Busch*. In creating the wrongful death statute, the legislature provided a cause of action to a class of plaintiffs that would not have had a claim at common law—the survivors of individuals killed by the negligent act of another—and, in so doing, chose to limit the amount of noneconomic damages recoverable from defendants in such cases, leaving economic damages without a cap.

Plaintiff argues that, but for the wrongful death statute, contemporary Oregon courts likely would recognize a common law claim for wrongful death actions. To say that, if legislature had not decided to create a statutory right, the common law would have evolved differently and might have recognized a new claim that, if it had come into existence, would not be subject to any limitation is simply too counterfactual to be persuasive. Further, plaintiff has not asserted that the wrongful death claim at issue is in fact a common law claim but rather has relied on the statute throughout the case. *See Storm*, 334 Or at 222 (rejecting an identical argument as "beside the point" when the party had relied on the wrongful death statute throughout litigation, but ultimately deciding the case on the basis of the sufficiency of the remedy provided under the Worker's Compensation Law applicable to public employees). In amending ORS 31.710(1), the legislature has not departed from the common law, either as it was understood in 1857 or as it exists today. Rather, the legislature has continued to provide a statutory cause of action not cognizable under the common law in Oregon, subject to a cap on noneconomic damages, just as it has for all but twenty years since the first such statute was promulgated, in 1862. We conclude that, given that wrongful death actions are not cognizable under the common law, the statutory *quid pro quo* creating such a cause of action, and the history of limitations on damages recoverable in wrongful death cases, ORS 31.710(1) does not violate Article I, section 10.

Recognizing that the final award amount does not solely determine the constitutionality of a remedy cap, we must nevertheless ensure that the amount awarded is itself constitutionally adequate. *Horton*, 359, Or at 224; *Busch*, 366 Or at 638, 643; *Crandall*, 374 Or at 711. In the case before us, the jury awarded total damages of $5,000,000. After reducing the noneconomic damages down to the remedy cap, the total remedy remains $3,391,588. This is far more than a "paltry fraction" of the total jury award and is therefore a constitutionally adequate amount. *Horton*, 359 Or at 221.

The trial court did not err in reducing the plaintiff's noneconomic damages award to the statutory maximum set forth in ORS 31.710(1).

Affirmed.