No. 1 January 22, 2026 699

IN THE SUPREME COURT OF THE
STATE OF OREGON

Shirley "Joe" CRANDALL,
*Petitioner on Review,*
*and*
Mary CRANDALL,
*Plaintiff,*
*v.*
STATE OF OREGON,
*Respondent on Review,*
*and*
Mitchell FULLER
and Tyler Womack,
*Defendants.*
STATE OF OREGON,
*Third-Party Plaintiff,*
*v.*
Donald ANDRESEN,
dba Eagle Fire,
*Third-Party Defendant.*
(CC 20CV10350) (CA A174313) (SC S070647)

On review from the Court of Appeals.*

Argued and submitted September 12, 2024.

Lisa T. Hunt, Law Office of Lisa T. Hunt, LLC, Lake Oswego, argued the cause and filed the briefs for petitioner on review.

Peenesh Shah, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* On appeal from Jackson County Circuit Court,Timothy Barnack, Judge. 328 Or App 452, 538 P3d 212 (2023).

James S. Coon, Thomas Coon Newton & Frost, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association. Also on the brief was Julene M. Quinn, Quinn & Heus, Beaverton.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, and Masih, Justices, and Egan, Judge, Justice pro tempore.\*\*

FLYNN, C.J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Garrett, J., dissented and filed an opinion, in which Duncan, J., joined.

_____

\*\* Bushong, J., did not participate in the consideration or decision of this case.

**FLYNN, C.J.**

In this personal injury case, plaintiff alleges that two employees of the Oregon Department of Forestry negligently caused him to suffer physical injury while he was working for a private employer. At issue is a tension between the guarantee of a "remedy by due course of law" in Article I, section 10, of the Oregon Constitution and an immunity provision of the Oregon Tort Claims Act that eliminates the right to recover damages for injury caused by a negligent public employee for any person covered by any workers' compensation law at the time of injury. In general, the Tort Claims Act reflects a carefully crafted accommodation through which the state waived its immunity from liability for its torts and committed to indemnify state employees for their tortious acts, while placing a cap on the damages that an injured person may recover in a common-law negligence action. But individuals injured while covered by any workers' compensation law are excluded from that accommodation and denied the remedy of a common-law negligence claim against either the state or its negligent employees, ORS 30.265(6)(a).

The trial court and Court of Appeals relied on that statutory immunity provision to dismiss plaintiff's claims, and this court allowed review. As we will explain, we conclude that the immunity provision exceeds the substantive limits that Article I, section 10, imposes on the legislature's authority to modify common-law remedies. Accordingly, we reverse the Court of Appeals decision and, as we will explain, remand the case to the circuit court for further proceedings.

## I.   FACTUAL BACKGROUND[1]

Plaintiff was severely injured while operating a bulldozer as part of a firefighting operation when the bulldozer went off the side of an access road and flipped multiple times before coming to a rest about 100 feet below. At the time, plaintiff was employed by a private company

---

[1] We describe the facts alleged in the operative complaint purely for background. ORS 30.265(6)(a) required dismissal of plaintiff's claims regardless of any particular circumstances of plaintiff's case, solely on the basis of the undisputed fact that he was covered by Oregon's workers' compensation law at the time of the injury.

with whom the Oregon Department of Forestry (ODF) had contracted to supply personnel for the 2018 Sugar Pine fire near Trail, Oregon. Plaintiff received workers' compensation benefits through his employer and also filed this civil action against the State of Oregon and two individual state employees who were supervisors for ODF at the fire site, Fuller and Womack.

ODF was directing all firefighting efforts at the Sugar Pine fire and had assigned plaintiff to drive a bulldozer up a narrow access road at night to build a fire line. Late that night, plaintiff reported to Womack that the combination of darkness, smoke, and dust made it difficult for him to see and safely operate the bulldozer. After Fuller confirmed the poor visibility, he directed plaintiff to drive the bulldozer back down the access road to a staging area. The narrow road was sandwiched between a steep uphill slope on one side and steep slope down to a canyon on the other. Plaintiff continued to experience poor visibility as he drove down the road, and, partway down, plaintiff encountered a crew of 20-40 workers along the uphill side of the road. Plaintiff had not been warned to expect the workers, and they had not been warned to clear the road for plaintiff to come by. As plaintiff attempted to avoid them, the bulldozer's left track slipped off the road. The bulldozer tumbled down the slope, flipping at least three times with plaintiff inside the cab, and eventually came to rest at the bottom of the canyon. Plaintiff survived the fall but suffered extensive injuries.

Plaintiff filed the present action. The operative complaint alleges that defendants Fuller and Womack had been negligent[2] and had violated their duties under Oregon's Employer Liability Law, ORS 654.305, by conduct including ordering plaintiff to drive the bulldozer back down the hill in conditions that posed an unreasonably dangerous risk of

---

[2] The first amended complaint alleged that the conduct of the employees amounted to "gross negligence," which is a common-law claim involving negligent conduct plus something more. *See Turner, Adm'r, v. McCready et al.*, 190 Or 28, 58, 222 P2d 1010 (1950) ("Negligent conduct is a part of the sum total which makes up gross negligence."). But plaintiff's arguments focus on the elimination of a remedy for breaches of duty amounting to ordinary negligence, and neither party suggests that Article I, section 10, would apply differently to a claim for "gross negligence" than to a claim for ordinary negligence.

serious harm, failing to keep in proper radio contact with the crews working on the access road, and failing to provide a signal person to help plaintiff navigate in the poor visibility. That conduct, he alleged, caused him to suffer damages in an amount as high as $2.7 million. The complaint alleged that Fuller and Womack were liable, and that their state employer was vicariously liable, for the damages that plaintiff suffered. The complaint also alleged a claim of $800,000 for loss of consortium for plaintiff's wife.

Defendants moved to dismiss for failure to state a claim, pointing to two different provisions of the Tort Claims Act. First, defendants moved to dismiss the individual defendants under ORS 30.265(3), which makes the public body the sole proper defendant in a tort claim alleging that employees of the public body committed a tort, subject to the liability cap of the Tort Claims Act. Second, defendants moved to dismiss the action against the state under ORS 30.265(6), which provides immunity for "[e]very public body and its officers, employees and agents acting within the scope of their employment" from any claim for injury or death covered by any workers' compensation law. The trial court heard the motions together and granted both motions as to plaintiff's claims. However, regarding the motion to dismiss based on the workers' compensation immunity, the court held that it did not bar the wife's claim against the state for her loss of consortium. The court entered a limited judgment dismissing plaintiff's claims, from which he appealed.

On appeal, plaintiff assigned error to both rulings. He argued that the immunity extended to public bodies and their employees under ORS 30.265(6) violated his constitutional right to a remedy under Article I, section 10, and he argued that the trial court incorrectly calculated the applicable tort claim cap for purposes of ORS 30.265(3). For both reasons, he contended, the trial court erred in concluding that the state is the sole proper defendant in the action. The Court of Appeals concluded that plaintiff's challenge to the dismissal of the individual defendants under ORS 30.265(3) was inconsequential because the immunity granted by ORS 30.265(6) "by its terms precludes the imposition of tort liability

on either the state or the individuals." *Crandall v. State of Oregon*, 328 Or App 452, 457, 538 P3d 212 (2023). It also held that the grant of immunity to bar plaintiff's claims against the individual state employees does not violate Article I, section 10. *Id.* This court allowed plaintiff's petition for review, and we now reverse the decision of the Court of Appeals.

## II.   ANALYTICAL FRAMEWORK

The dispute in this case requires us to consider once again the scope of protections afforded by the remedy clause of Article I, section 10, of the Oregon Constitution. That clause, which is part of the original Oregon Constitution, provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Or Const, Art I, § 10.

When we construe provisions of the original Oregon Constitution, "[w]e examine the text in its context, the historical circumstances of the adoption of the provision, and the case law that has construed it." *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011) (stating the holding in *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992)). The purpose of applying that analytical framework is to "ascertain the meaning most likely understood by those who adopted the provision" in order to "identify, in light of the meaning understood by the framers, relevant underlying principles that may inform our application of the constitutional text to modern circumstances." *Davis*, 350 Or at 446.

This court has previously undertaken that comprehensive analysis of Oregon's remedy clause to determine what it protects and what considerations inform our analysis of whether a legislative action violates that constitutional right, most recently in *Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016). Based on an extensive review of this court's prior cases construing the provision, *Horton* derived three fundamental principles regarding the meaning of the guarantee that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation."[3]

---

[3] We observed in *Horton* that "the text and the history of the remedy clause do not yield a clear answer regarding the clause's meaning." 359 Or at 217. The framers essentially adopted Article I, section 10, "wholesale from the 1851

First, the remedy clause grants injured persons a substantive right and places a substantive limit on the legislature's ability to alter or adjust common-law remedies. *Id*. at 217-18; *see Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 650, 468 P3d 419 (2020) (emphasizing that *Horton* aligns with earlier cases that "tell us" that "the right to remedy is a substantive right"). *Horton*, thus, rejected the defendant's argument that we should interpret Oregon's remedy clause as merely a guarantee of access to the courts. 359 Or at 217; *see Busch*, 366 Or at 635 (explaining that this court in *Horton* had described the prior decisions as holding that the remedy clause protects a substantive right and had "declined 'to toss that considered body of decisions aside'" (quoting *Horton*, 359 Or at 218)).

Second, the substantive right that the remedy clause protects is the common-law right to recover for injury to one's person, property, or reputation. *Horton*, 359 Or at 218. *Horton* explained that "common-law causes of action and remedies provide a baseline for measuring the extent to which subsequent legislation conforms to the basic principles of the remedy clause—ensuring the availability of a remedy for persons injured in their person, property, and reputation." *Id*. But *Horton* makes clear that, "when the framers drafted the Oregon Constitution in 1857, they would have understood that the common law was not tied to a particular point in time but instead continued to evolve to meet changing needs." *Id*. at 183. In reaching that conclusion, *Horton* overruled this court's earlier conclusion in *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001) that remedy-clause protections are tied to the Oregon common law as it existed in 1857. *Horton*, 359 Or at 218-19. It also "cautioned against over-reliance on cases decided after *Smothers* and decided 'through the lens that [it] provided.'" *Busch*, 366 Or at 636 (quoting *Horton*, 359 Or at 221).

Third, the remedy clause does not entirely "preclude the legislature from altering either common-law duties or the remedies available for a breach of those duties." *Horton*,

Indiana Constitution," and engaged in no debate. *Id*. at 216. Thus, our past decisions primarily informed our analysis of the meaning of the remedy clause.

359 Or at 219. As *Horton* explains, under Article XVIII, section 7, of the Oregon Constitution, "one of the functions of the legislature is to adjust the duties that one person owes another and the remedies for a breach of that duty as societal conditions change." *Id*. at 220. And this court's early cases recognized "that common-law remedies are not unalterable." *Id*. at 213.

In recent decades, this court's remedy clause cases have primarily focused on the tension between the principle that Article I, section 10, places substantive limits on the legislature's ability to alter or adjust common-law remedies and the principle that the provision retains some ability for the legislature to modify common-law duties and remedies. *Id*. at 193-94. *Horton* cautioned that "[i]t is difficult to reduce our remedy clause decisions to a simple formula." *Id*. at 220. But the court identified general guidance based on the different categories of legislation that this court's remedy clause cases have considered in "determining the limits that the remedy clause places on the legislature." *Id*. at 219.

*Horton* explained that this court's earliest remedy clause cases tended to involve challenges to legislation that left intact a duty (typically of cities to maintain their streets in good repair) but eliminated a remedy for injuries caused by a breach of that duty. *Id*. at 189-90. *Horton* emphasized that, "when the legislature has not altered a duty but has denied a person injured as a result of a breach of that duty any remedy, our cases have held that the complete denial of a remedy violates the remedy clause." *Id*. at 219; *see Mattson v. Astoria*, 39 Or 577, 579-81, 65 P 1066 (1901) (cited in *Horton* for proposition that, "although the legislature could exempt a city from liability for breaching [the duty to maintain its streets], the remedy clause prevented the legislature from exempting both the city and its officials from all liability").

Later, "[a]s legislative enactments grew more complex," this court's remedy clause cases addressed challenges to statutes that left a common-law duty intact but modified—without eliminating—the remedy for breach of that duty.[4] *Horton*, 359 Or at 196-97. In those cases, we explained

---

[4] In repeating *Horton*'s framework for categorizing this court's remedy clause decisions, we reiterate our prior caution that the categories were not intended to

that "what has mattered in determining the constitutionality of the legislature's action is the reason for the legislative change measured against the extent to which the legislature has departed from the common law." *Id*. at 219.[5] However, "even if the legislature's reasons for [the departure] are constitutionally sufficient," the court has considered—as "a final check"—whether the particular "plaintiff has received a constitutionally sufficient remedy" given the damages suffered. *See Busch*, 366 Or at 644 (describing *Horton* analysis with respect to whether the damages cap survived the remedy-clause challenge).

With that understanding of the remedy clause, this court in *Horton* considered a challenge to a provision of the Tort Claims Act, which waived the state's sovereign immunity for torts and indemnified negligent public employees, but limited to 3 million dollars the amount that the injured individual could recover in a negligence action against either the state or the employee. *See* 359 Or at 222 (describing ORS 30.285(1) and ORS 30.271(3)).[6] The plaintiff in *Horton* was the mother of a six-month-old child who had suffered severe complications after surgeons at Oregon Health & Science University (OHSU) inadvertently transected blood vessels going to the child's liver. *Id*. at 171. OHSU and one of the doctors admitted liability, and the jury found that the child

---

be applied mechanically. *Bonner v. American Golf Corp. of California*, 372 Or 814, 822, 558 P3d 812 (2024). *Horton* itself emphasized that it is "difficult to reduce our remedy clause decisions to a simple formula." 359 Or at 220; *see Busch*, 366 Or at 637 n 6 (commenting that "[w]e do not understand the court's description of categories of statutes as providing a 'procrustean template' for analysis").

[5] This court has "upheld statutes that modify common-law duties, or even, on occasion, eliminate common-law causes of action 'when the premises underlying those duties and causes of action have changed.'" *Busch*, 366 Or at 649 (quoting *Horton*, 359 Or at 219). Examples include the legislature's abolition of the common-law torts of criminal conversation and alienation of affections. *Horton*, 359 Or at 220. In deciding the constitutionality of such statutes, we have considered "whether the common-law cause of action that was modified continues to protect core interests against injury to persons, property, or reputation or whether, in light of changed conditions, the legislature permissibly could conclude that those interests no longer require the protection formerly afforded them." *Id*. at 219-20.

[6] Prior to *Horton*, this court had resolved that Oregon Health & Science University (OHSU) is an "instrumentality of the state performing state functions" and, thus, would have been immune from liability at common law under the principle of sovereign immunity implicit in the constitution. *Clarke v. OHSU*, 343 Or 581, 594, 600, 175 P3d 418 (2007).

had and would sustain more than $6 million in economic damages and another $6 million in noneconomic damages. *Id.* OHSU and one of the doctors moved to reduce the verdict to $3 million, the applicable cap in the Tort Claims Act. *Id.* at 171. The trial court held that, as to the doctor, the damages cap violated the remedy clause, and the doctor pursued a direct appeal in this court. *Id.* at 172.

This court ultimately concluded that the damages cap did not violate the remedy clause. *Id.* at 254. In doing so, we started by emphasizing that the Tort Claims Act did not alter the common-law duty that the physician owed to their patient and that it departed from the common-law model by modifying—without eliminating—the patient's remedy for breach of that duty. *Id.* at 221. *Horton*, thus, relied on guidance from the remedy clause cases addressing that category of legislation, and the court evaluated "the reason for the legislative change measured against the extent to which the legislature has departed from the common law." *Id.* at 219-24.

We explained that the legislature's reason for departing from the common law in the Tort Claims Act was the need to accommodate competing, significant interests: "the state's constitutionally recognized interest in asserting its sovereign immunity" and its interest in indemnifying state employees—to whom sovereign immunity does not extend—for liability they incur while acting on behalf of the state. *Id.* at 222. As we observed, many of the functions "the state undertakes on behalf of its citizens entail risks of liability that few private entities would choose to bear," and, "if the state chose not to indemnify its employees for any liability that they incurred while acting on its behalf and shifted all the risk to its employees, few qualified persons would choose to work for the state." *Id.* *Horton* explained that the Tort Claims Act resolved that dilemma "by waiving the state's immunity for its torts but capping the amount for which the state can be held liable" and by committing the state to indemnify "state employees for liability in tort for acts occurring in the performance of their public duty but cap[ping] the amount of their liability at the amount for which the state has waived its sovereign immunity." *Id.* at 222.

In describing the extent to which the legislature had departed from the common-law model, we gave significant weight to the fact that the legislature had modified the common-law remedy through a "comprehensive statutory scheme" that gave plaintiffs "something that they would not have had if the state had not partially waived its immunity": it ensured that "a solvent defendant will be available to pay any damages up to $3,000,000—an assurance that would not be present if the only person left to pay an injured person's damages were an uninsured, judgment-proof state employee." *Id*. at 221-22.

And we emphasized that, in determining the extent to which the Tort Claims Act would limit the liability of negligent public employees, the 2009 Legislative Assembly had taken great care to set a damages limit that would "provide a complete recovery in many cases [and] greatly expand the state's liability in the most egregious cases." *Id*. at 223. We highlighted the legislature's recognition that the prior tort claim limit of $200,000 had been "vastly inadequate" and its consideration of "actuarial data about the impact of unlimited recoveries on public bodies and the impact of different levels of caps" before deciding to provide a new, higher cap on aggregate claims of $3 million with additional, annual increases indexed for inflation. *Id*.

Given the particular constellation of circumstances, *Horton* held that the $3 million limit on damages against negligent state employees was sufficient to prevent the damages cap from violating the remedy clause. *Id*. at 224. *Horton* specifically highlighted the legislature's efforts "to accommodate the state's constitutionally recognized interest in sovereign immunity and a plaintiff's constitutional right to a remedy" and that the legislature had modified the remedy as part of an "overall statutory scheme" that "extends an assurance of benefits" from a solvent defendant while also limiting the amount of those benefits in a way that would affect some claims. *Id*. But *Horton* cautioned that our holding was limited to those precise circumstances, and "it turn[ed] on the presence of the state's constitutionally recognized interest in sovereign immunity, the *quid pro quo* that the Tort Claims Act provides, and the tort claims limits

in [that] case." *Id.* at 225; *see Busch*, 366 Or at 643 (emphasizing that *Horton* listed all of the "factors" described above as providing the "heft" to "counterbalance the Article I, section 10, right to remedy").[7]

This court examined and explained *Horton* in *Busch*. In *Busch*, we considered a different statutory cap on damages—the $500,000 limit that ORS 31.710 (2019)[8] placed on the amount an injured person could recover as noneconomic damages in a civil action against a negligent actor. 366 Or at 630-31. We described *Horton* as providing the framework for our analysis because, like the statute at issue in *Horton*, the statute limiting noneconomic damages left intact the common-law duty that a defendant owes a plaintiff—the duty to act with reasonable care—and limited, without eliminating, the remedy that an injured plaintiff may recover for injuries caused by a breach of that duty. *Id.* at 639-40. We reiterated *Horton*'s conclusion that the framework for analyzing whether the legislature's actions impair a person's right to a remedy requires us to consider "'the extent to which the legislature has departed from the common-law model measured against its reasons for doing so.'" *Id.* at 636 (quoting *Horton*, 359 Or at 220). Applying that framework, we concluded that the $500,000 that ORS 31.710 (2019) imposed on noneconomic damages violated the remedy clause. *Id.* at 652.

We started by rejecting an argument that *Horton*'s analytical framework can be replaced with the single question of whether the legislative enactment has left the plaintiff with a remedy that is "'substantial' and adequate 'in and of itself.'" *Id.* at 644. The defendant in *Busch* had pointed to an earlier case in which this court upheld against a remedy clause challenge a different statute that also limited a plaintiff's recovery to "100 percent of economic damages plus up to $500,000 in noneconomic damages" and had urged this court to conclude that the same recovery "always

---

[7] When a "'benefit has been conferred, but a counterbalancing burden has been imposed,'" we have described such a legislative tradeoff as a quid pro quo. *Horton*, 359 Or at 194 (quoting *Hale v. Port of Portland*, 308 Or 508, 523, 783 P2d 506 (1989)).

[8] As amended in 2021, ORS 31.710 now caps only the noneconomic damages in wrongful death claims. Or Laws 2021, ch 478, § 1.

is a substantial amount, and therefore a substantial remedy, and leave our constitutional analysis there." *Id.* at 642 (describing argument premised on *Greist v. Phillips*, 322 Or 281, 291, 906 P2d 789 (1995) (emphasis omitted)). We rejected the argument, emphasizing "a stroke in that direction, however, would be to swim against the tide of *Horton*, *id.*, under which the question of whether a limitation on liability survives a remedy-clause challenge "is not determined solely, or even significantly, by calculating the difference between the damages awarded by a jury and the award permitted by statute and making a judicial assessment of whether the two are so disparate that some adjectival label (substantial or insubstantial, paltry or emasculated) applies," *id.* at 644. Rather, *Horton* considered whether the modified remedy "was sufficiently substantial to be constitutionally adequate" only as "a final check on the constitutionality of the limited remedy as applied to the plaintiff." *Busch*, 366 Or at 638 (internal quotation marks omitted).

 *Busch* then considered, as *Horton* directs, the extent that the legislature had departed from the common law and its reasons for doing so, and we explained that both economic and noneconomic damages are part of the common-law remedy for personal injury. *Id.* at 645-47; *see also Clarke v. OHSU*, 343 Or 581, 608, 175 P3d 418 (2007) (describing as undisputed "that, when Oregon adopted its remedy guarantee, plaintiff would have been entitled to seek and, if successful, to recover both types of damages from the individual defendants"). Thus, we emphasized that it made no difference for purposes of the remedy clause that the legislature had limited only noneconomic damages, leaving economic damages untouched, because "it is what those types of damages have in common that is important for purposes of Article I, section 10." 366 at 645. We explained that, in limiting a plaintiff's ability to recover the full amount of noneconomic damages that a jury might determine "is necessary to compensate the plaintiff for the right that was injured," the legislature had modified the common-law remedy for that personal injury. *Id.* at 650-51.

 We then considered "whether the legislature's reasons for imposing those limits were sufficiently weighty to

counterbalance the Article I, section 10, right to remedy."
*Busch*, 366 Or at 642-43, 647. We highlighted that, unlike
the Tort Claims Act provision in *Horton*, "which g[ave]
injured persons the ability to bring a claim against a solvent
defendant that otherwise would have been immune from
suit," the limitation on noneconomic damages conferred no
benefit on injured plaintiffs in exchange for denying recov-
ery of the full compensation that the common law provides
for such injuries. *Id.* at 651. It was not enough that the leg-
islature intended the damages cap to produce benefits that
would "inure to society in general" (the reduction of insur-
ance costs and improved insurance availability). *Id.* at 648,
651; *see id.* at 652 ("If the legislature provided a counter-
balance for plaintiff's loss of his right to a remedy, it is not
apparent here.").

Although we acknowledged in *Busch* that a quid
pro quo is not always required for legislation to survive a
remedy-clause challenge, we emphasized that, "when this
court has upheld statutes that do not modify a common-law
duty but limit the remedies available for their breach, a *quid
pro quo* has often been present." *Id.* at 649. In the context of
the legislature's cap on noneconomic damages, we empha-
sized that the legislature's "failure to provide a *quid pro
quo* to counterbalance a plaintiff's right to a remedy under
Article I, section 10, str[uck] a real blow" to the constitution-
ality of the statute, as did the lack of indication in the legis-
lative history that the legislature set the damages limit "at
a sum capable of restoring the right that had been injured
in many, if not all, instances, and would remain capable of
doing so over time." *Id.* at 651-52.

## III.   APPLICATION

As we did in *Busch*, we start by rejecting an argu-
ment that invites us to collapse *Horton*'s analytical frame-
work and replace it with the single question of whether the
legislative enactment has left the plaintiff with a remedy that
is "substantial." The state argues that *Horton* endorses the
idea that workers' compensation law—which creates a sys-
tem of no-fault benefits but precludes injured workers from
bringing common-law actions against compliant employ-
ers for harm caused by negligent employers or co-workers,

ORS 656.018.[9]—is an example of a permissible quid pro quo. And it emphasizes that "[n]either plaintiff nor amicus dispute that the limited workers'-compensation remedy [under Oregon law] is constitutionally sufficient in light of the overall scheme" of the workers' compensation statutes. From that premise, the state reasons that the benefit scheme under Oregon workers' compensation law is inherently "constitutionally adequate and substantial under the Remedy Clause" and therefore "[t]hat should be the end of the analysis."

As we emphasized in *Busch*, however, suggesting that any particular modified remedy inherently survives scrutiny under the remedy clause is "to swim against the tide of *Horton*," 366 Or at 642, under which the question of whether a limitation on liability survives a remedy-clause challenge "is not determined solely, or even significantly, by" comparing what the plaintiff would have received under the common law to the remedy that remains available to a plaintiff under the statute and "making a judicial assessment of whether the two are so disparate that some adjectival label (substantial or insubstantial, paltry or emasculated) applies." *Id*. at 644. Moreover, and as we will explain, the limited remedy that ORS 30.265(6)(a) leaves for individuals injured by negligent public employees during the course of their work for a private employer substantially departs from the common-law remedy that remained available to those same individuals under Oregon's workers' compensation law. Thus, we decline the state's invitation to end the analysis before it begins.

---

[9]  ORS 656.018 provides, in pertinent part:

"(1)(a)  The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom[.]

"* * * * *

"(3)  The exemption from liability given an employer under this section is also extended to the employer's insurer, the self-insured employer's claims administrator, the Department of Consumer and Business Services, and to the contracted agents, employees, partners, limited liability company members, general partners, limited liability partners, limited partners, officers and directors of the employer, the employer's insurer, the self-insured employer's claims administrator and the department[.]"

Although there are numerous differences between the immunity that ORS 30.265(6)(a) grants to negligent public bodies and their negligent officers, employees, and agents, and the statutory limitations on damages at issue in *Horton* and *Busch*, they all share one common characteristic: The legislation modifies the common-law remedy for a category of people injured by the negligence of state employees, but it does not purport to alter the common-law duty of those employees to act with reasonable care. *Horton* and *Busch* thus provide a framework for analyzing the constitutionality of immunity that ORS 30.265(6)(a) grants to negligent public bodies and their negligent officers, employees, and agents.[10] As those cases explain, when deciding whether legislation of this type "impair[s] a person's right to a remedy under Article I, section 10," courts must consider "'the extent to which the legislature has departed from the common-law model measured against its reasons for doing so.'" *Busch*, 366 Or at 636 (quoting *Horton*, 359 Or at 220).

A.   *Departure from Common Law*

Plaintiff's complaint alleges that he suffered injury to his person as a result of negligence on the part of Womack and Fuller, for which they are liable and their employer—a state entity—is vicariously liable. To understand the extent of the departure from the common law that ORS 30.265(6) (a) takes, we first explain what the remedy available to a plaintiff at common law would have been. In considering that question, we emphasize that ORS 30.265(6) makes both a public body and its employees immune from "[a]ny claim for injury to or death of any person covered by any workers' compensation law," and the common law treats the two very differently.

   1.   *Departure from common law for claim against the employer*

Under the common-law model, negligence claims against the state are barred by the doctrine of sovereign

_____

[10]  More recently in *Bonner*, this court addressed a remedy clause challenge in which the dispute turned on whether the challenged statute deviated at all from the "common-law model" at the time when the legislation was enacted. 372 Or at 823. In this case, the common-law model clearly provides a remedy for the alleged breach of the duty to exercise reasonable care.

immunity, which is implicit in the Oregon Constitution.[11] *See Clarke*, 343 Or at 594 (explaining that Article IV, section 24, embodies that premise). "[T]he doctrine may only be waived or altered by the legislature pursuant to a general law," which the legislature has done to some extent through the Tort Claims Act. *Id.* But the legislature's decision to leave the state's sovereign immunity in place to some extent does not violate Article I, section 10. *Id.* at 600; *see Hale v. Port of Portland*, 308 Or 508, 518, 783 P2d 506 (1989) (explaining that liability limitation for an entity that shares in the state's sovereign immunity does not deny a right guaranteed under Article I, section 10, "because there never was such a right").[12] Plaintiff does not identify any flaw in the reasoning of those decisions, and his arguments do not address the immunity that the Tort Claims Act has retained for the state, except to the extent it affects the constitutionality of the immunity granted to the individual employees. Thus, the remainder of this opinion focuses on plaintiff's challenge to the immunity granted to negligent state employees.

2. *Departure from common law for claims against negligent employees*

The immunity extended to the negligent employees effects a substantial departure from the common law. As a matter of common law, in general, every person owes to every other the duty to exercise reasonable care to avoid foreseeable risks of physical harm.[13] *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). Indeed, the right to seek and recover the amount that a jury determines is necessary to compensate a plaintiff for negligently caused personal injury has been a part of Oregon's common law since its inception. *See Smothers*, 332 Or at 129 (describing

---

[11] As the Court of Appeals observed, "not all public bodies covered by the [Tort Claims Act] share the state's entitlement to sovereign immunity," and there is a "possibility that a different analysis might apply" in a case involving the elimination of a common-law negligence action against one of those public bodies. *Crandall*, 328 Or App at 457 n 3.

[12] *Smothers* abrogated *Hale*, but our decision in *Horton* overruled *Smothers* and "reaffirm[ed] our remedy clause decisions that preceded *Smothers,* including the cases that *Smothers* disavowed." *Horton*, 359 Or at 218.

[13] As explained above, the claim for loss of consortium suffered by plaintiff's wife is not at issue in this appeal, so this opinion does not undertake an explication of the common-law principles governing that claim.

history of common-law negligence claim). That common-law remedy extends to individuals injured during the course of their employment as well as those injured by negligent public employees—as long as the claim was not based on a policy judgment by a person delegated authority to exercise governmental discretion. *See Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 158, 163, 61 P3d 918 (2003) (examining common-law negligence claim for a workplace injury against a third-party general contractor); *Sacher v. Bohemia, Inc.*, 302 Or 477, 481, 731 P2d 434 (1987) (explaining that, historically, "employees injured on the job could proceed against their employers under common-law negligence"); *McBride v. Magnuson*, 282 Or 433, 436-38, 578 P2d 1259 (1978) (explaining discretionary act immunity for public officials). Moreover, as we emphasized in *Busch*, both economic and noneconomic damages are part of the common-law remedy for personal injury. 366 Or at 645. Thus, there is no dispute that, under the common-law model, plaintiff would have the right to pursue his negligence claim against defendants Fuller and Womack and to recover the full amount of economic and noneconomic damages to which a jury determines he is entitled.[14]

A threshold dispute is the extent to which the legislature has departed from the common-law model. The Tort Claims Act eliminates that common-law remedy for every plaintiff "covered by any workers' compensation law" at the time that they are injured by a negligent public employee while also retaining the state's immunity from liability for its employees' actions. ORS 30.265(6)(a). It eliminates the remedy regardless of whether the plaintiff is working for a different employer on a job site or, for example, just happens to be covered by workers' compensation law at the time they are hit by a negligent public bus driver or carpooling public employee:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing

---

[14]  In this case, plaintiff also alleged a claim under ORS 654.305, part of this state's Employer Liability Law (ELL). The ELL imposes "higher standards of care than did the common law upon employers engaged in lines of work involving risk or danger," and it "gives rise to actions in negligence, but it does not create a cause of action in addition to that of the common law." *Sacher*, 302 Or at 481 (internal quotation marks omitted).

arrangement authorized under ORS 276.598, are immune from liability for:

"(a)   Any claim for injury to or death of any person covered by any workers' compensation law."

ORS 30.265(6).[15] In other words, it eliminates the common-law remedy for every individual accidentally injured during the course and scope of employment because that is the definition of a person covered by Oregon's Workers' Compensation Law.

Plaintiff urges us to conclude that the legislative enactment is, therefore, comparable to the earliest statutes this court evaluated under the remedy clause, which left intact a duty but eliminated a remedy for injuries caused by a breach of that duty. As emphasized above, this court has consistently held that statutes of that type violate the remedy clause. *Horton*, 359 Or at 196. But the state emphasizes that ORS 30.265(6)(a) precludes the claims only of a person whose injury is covered by workers' compensation law. As a result, the state reasons, the person is left with the remedy of benefits under workers' compensation law. Although plaintiff insists that we should analyze ORS 30.265(6)(a) without considering workers' compensation benefits—because the latter are the product of an "insurance fund paid into by both the employer and employee" and provided under a preexisting statutory scheme for which the benefits are already a quid pro quo for the immunity granted to employers who negligently injure a worker—we have suggested at least in *dicta* that workers' compensation benefits are relevant when we consider whether ORS 30.265(6)(a) violates the remedy clause. *See Neher v. Chartier*, 319 Or 417, 420, 426, 879 P2d 156 (1994), *abrogated on other grounds by Storm v. McClung*, 334 Or 210, 47 P3d 476 (2002).

The plaintiff in *Neher* was the personal representative of the estate of his daughter, who was killed by a

---

[15] Oregon's workers' compensation law requires employers to provide "coverage" (either as a "carrier-insured" or "self-insured" employer) for "compensable injuries" to their "subject workers"—a category that essentially encompasses all workers except for specifically identified "nonsubject workers." ORS 656.017; ORS 656.027. In general, a "compensable injury" under Oregon's law "is an accidental injury *** arising out of and in the course of employment requiring medical services or resulting in disability or death." ORS 656.005(7)(a).

public-employee bus driver while she was engaging in an activity covered by Oregon's workers' compensation law. 319 Or at 420-21. The trial court dismissed the plaintiff's wrongful death action as barred by the public-employee immunity now set out at ORS 30.265(6)(a), and the plaintiff contended that the provision violated the remedy clause. *Id*. at 421. This court agreed that the immunity provision "violates Article I, section 10, of the Oregon Constitution," explaining that it left the surviving parents, who were beneficiaries of the estate and had no right to workers' compensation benefits, "wholly without a remedy." *Id*. at 426-28. In the course of doing so, however, we observed that the estate itself was entitled to up to a $3,000 burial benefit under workers' compensation law and, "therefore, has not been left entirely without a remedy." *Id*. at 426. The observation is *dictum*, made in the context of explaining that the benefit was irrelevant to the ultimate analysis, because the estate "is not the only real party in interest in the wrongful death action." *Id*. at 426.[16] Nevertheless, we will assume for purposes of this opinion that the legislature can accomplish through multiple legislative enactments any modification of the common law that it could accomplish in a single enactment. Thus, we include the benefits available to an injured person under workers' compensation law when evaluating the extent to which the legislature has departed from the common-law model.

Even evaluating ORS 30.265(6)(a) in light of the benefits afforded through workers' compensation coverage, however, the departure from the common-law model is substantial. Under Oregon's workers' compensation law, compensation is available to a covered worker who has suffered a "compensable injury." ORS 656.202; ORS 656.245. In general, a "compensable injury" means an "accidental injury ✱✱✱

---

[16] The Court of Appeals, relying substantially on one of its earlier decisions, treated the *dictum* in *Neher* as essentially establishing that workers' compensation coverage is "a substantial remedy" that precluded the plaintiff's Article I, section 10, challenge to the grant of immunity to individual public employee under the Tort Claims Act. 328 Or App at 465-66 (discussing *Gunn v. Lane County*, 173 Or App 97, 20 P3d 247 (2001), *rev den*, 334 Or 631 (2002)). But *Gunn*, which substantially predates *Horton* and *Busch*, misreads *Neher* and employs an analytical framework that swims "against the tide of *Horton*." *Busch*, 366 Or at 642. The question that we resolve today is not one that this court has previously addressed or resolved.

arising out of and in the course of employment [and] requiring medical services or resulting in disability or death." ORS 656.005(7)(a).[17] The benefits available under Oregon's workers' compensation law include payment for medical care and compensation to address a portion of the impairment that a compensable injury causes to the worker's temporary or permanent ability to work. *See* ORS 656.206 (providing that, "[i]f permanent total disability results from a worker's injury, the worker shall receive during the period of that disability" compensation amounting to two-thirds of their wages with a cap based on statewide average wages); ORS 656.210 (providing for compensation under the same formula when the total disability is only temporary); ORS 656.214 (providing for compensation under a formula determined by the agency director if the worker is permanently partially disabled); ORS 656.245 (specifying that worker is entitled to "medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires," subject to specified limitations). Noneconomic damages are not available as benefits under Oregon's workers' compensation law. *Vasquez v. Double Press Mfg., Inc.*, 364 Or 609, 622, 437 P3d 1107 (2019).

But for workers injured by the "the negligence or wrong" of third-party tortfeasors (tortfeasors employed by someone other than the plaintiff's employer), Oregon's workers' compensation law expressly preserves the worker's right to pursue a negligence claim against that third party to recover the full measure of their noneconomic and economic damages, regardless of whether the negligent tortfeasor is a state employee.[18] ORS 656.154. It is the immunity granted to public employees under ORS 30.265(6)(a) that eliminates for an entire class of persons injured by negligent public employees the common-law remedy of full economic and noneconomic damages that otherwise exists.

That departure from the common-law model is substantially greater than the departure created by the

---

[17] ORS 656.005(7) sets out numerous exceptions to and limitations on injuries that qualify as a "compensable injury."

[18] We assume, without deciding, that the liability exemption in Oregon's workers' compensation statutes, ORS 656.018, does not itself bar plaintiff from bringing this action against the state.

$3 million damages limit that this court sustained in *Horton* or the partial limit on noneconomic damages that *Busch* rejected as beyond the limit that Article I, section 10, places on the legislature.

Before evaluating whether ORS 30.265(6)(a) exceeds the legislature's limited authority to modify the common law, we pause to address an argument by the state that plaintiff has not properly raised the kind of constitutional challenge to the statute that we now consider. The Court of Appeals described its holding in terms of whether ORS 30.265(6)(a) can be "applied" constitutionally, and plaintiff's arguments use that phrasing as well, which prompted the state to contend that plaintiff has only raised an as-applied challenge to the statute and has not contended the statute is "facially invalid." *Crandall*, 328 Or App at 457 (declining to further engage with a facial constitutionality argument). The state's argument, however, misunderstands the point of the distinction that courts sometimes draw between those two concepts. In the Article I, section 10, context, we have used the labels "facial" and "as-applied" to distinguish between those challenges that can be resolved by considering how the statute would apply to any category of case and those challenges that generally cannot be resolved without "a record containing evidence of the nature of the injury sustained by a plaintiff and a jury's assessment of an appropriate damages award." *Jensen v. Whitlow*, 334 Or 412, 415, 51 P3d 599 (2002). Plaintiff has argued throughout that, regardless of the evidence of negligence or damages in a particular case, ORS 30.265(6)(a) violates the remedy clause to the extent that it eliminates the common-law remedy of an action to recover economic and noneconomic damages for harm caused by negligent state employees to persons injured while working for a private employer.

B.  *Reasons for Departure from the Common-Law Model*

Having explained why ORS 30.265(6)(a) effects a substantial departure from the common-law remedy available before adoption of the Tort Claims Act, we now measure that departure against the reasons for the legislative change, taking into account the degree of legislative "effort to accommodate the interests of injured persons and the

efficacy of that effort," in order to determine whether the legislature's reasons are "sufficiently weighty to counterbalance the Article I, section 10, right to a remedy" that ORS 30.265(6)(a) impairs. *See Busch*, 366 Or at 643 (explaining *Horton*'s analytical framework). The state suggests that, because the limitation at issue here also is part of the Tort Claims Act, *Horton*'s approval of the legislature's reasons for adopting the damages-cap provision of the Tort Claims Act necessarily means that those reasons provide the "heft" to counterbalance the Tort Claims Act's complete elimination of a common-law remedy for injuries governed by ORS 30.265(6)(a).

But *Horton* limited its holding to the constitutionality of the $3 million limit on damages in a civil negligence action. 359 Or at 225 (emphasizing that the "holding today is limited to the circumstances that this case presents, and it turns on the presence of the state's constitutionally recognized interest in sovereign immunity, the *quid pro quo* that the Tort Claims Act provides, and the tort claims limits in this case"). Indeed, *Horton*'s explicit observation that the original, significantly lower, damages cap would have been unlikely to survive a remedy clause challenge makes clear that *Horton*'s conclusion does not answer remedy-clause challenges to other remedy-limitations in the Tort Claims Act. 359 Or at 224, n 28; *see also Busch*, 366 Or at 64 (explaining that *Horton* "relied on the legislature's recognition that the prior tort claim limit of $200,000 was 'vastly inadequate' and its assessment of actuarial data to determine how to raise the limit to 'provide a complete recovery in many cases' and 'greatly expand the state's liability in the most egregious cases'" (quoting *Horton*, 359 Or at 223)). Thus, we turn to the limitation-specific inquiry that *Horton* requires.

As *Busch* explains, this court's decision in *Horton* identified multiple circumstances, or "factors," that together convinced us that the legislature's modification of the common-law remedy available to those harmed by negligent public employees—to a civil action against the public employer with damages capped at $3 million—could withstand constitutional challenge. *Id*. at 643. The factors that

convinced us in *Horton* were as follows: the state's interest in " sovereign immunity and its constitutional underpinnings"; "the state's need to indemnify its employees for liability they incur in carrying out state functions"; "the fact that the statute not only limited plaintiffs' remedies, but also provided them with a benefit they would not have otherwise received"; and "the legislature's effort to accommodate the interests of injured persons and the efficacy of that effort." *Id*.

We accept the state's proposition that the interests that motivated the legislature to adopt the modified common-law remedy under scrutiny in *Horton* also motivated the legislature to adopt the complete immunity at issue here. As we explained in *Horton*, the damages-limitation scheme under the Tort Claims Act reflects a specific accommodation of the "dilemma" created by two competing state interests—the state's interest in preserving its sovereign immunity and its interest in indemnifying its employees for liability they incur while acting on the state's behalf. 359 Or at 222. The same two interests are served by simply eliminating all liability for injury to a person who will be eligible for coverage under any workers' compensation law without offering the state as a substitute defendant, as the legislature has done in ORS 30.265(6)(a). But the remedy clause requires more than a law that serves the state's interests.

With the common-law modifications at issue in *Horton*, we explained, the legislature accommodated the state's "dilemma by waiving the state's immunity for its torts but capping the amount for which the state can be held liable." 359 Or at 222. The elimination of a common-law remedy at issue here, however, represents a very different type of legislative "accommodation"—requiring injured workers, private employers, and their insurers to bear the cost of injuries for which they are not responsible in order to protect negligent state employees. Moreover, nothing about our analysis in *Horton* suggests that the remedy clause permits the state to accommodate its interests by eliminating a common-law remedy without adding an alternative remedy that will be "capable of restoring the right that had been

injured in many, if not all, instances." *See Busch*, 366 Or at 651-52 (explaining why the damages cap at issue in *Horton* had survived constitutional challenge while the damages cap at issue in *Busch* did not).

Nevertheless, the state suggests that ORS 30.265(6)(a) still reflects a constitutionally permissible "accommodation," just a different accommodation than the one that we approved in *Horton*. It proposes that the legislature barred negligence actions by plaintiffs covered by workers' compensation law on the premise that the persons to whom state employees negligently caused injury would receive a "sufficient substitute remedy" for their injuries through their employers' workers' compensation insurance. The text of ORS 30.265(6)(a), which ties immunity to whether the plaintiff is "covered by any workers' compensation law," inherently supports the state's argument that the legislature assumed there would be some other form of compensation available to the injured persons to whom the legislature was denying a common-law remedy. And, as we have explained, we assume that the legislature can accomplish in multiple legislative enactments any modification of the common law that it could accomplish in a single enactment.

But the assurance of a right to recover medical benefits and a portion of other economic loss under Oregon's workers' compensation law falls far short of the assurance that we explained was critical to upholding the damages cap at issue in *Horton*, that a solvent defendant will pay up to $3 million of the amount a jury determines the person suffered in economic and noneconomic damages as the result of a negligent public employee. And, as we have emphasized, the assurance of a right to recover benefits under workers' compensation law, alone, falls far short of the assurance otherwise extended to those injured during the course of employment of a right to recover benefits under workers' compensation law *plus* full damages through a common-law action against a negligent third party.

No legislative enactment accommodates that substantial, additional departure from the common-law remedy. And none of the factors that persuaded this court in *Horton* to uphold the Tort Claims Act's limitation on damages that

may be recovered in a common-law action provide the "heft" to "counterbalance the Article I, section 10, right to remedy" that ORS 30.265(6)(a) substantially impairs. *See Busch*, 366 Or at 643.

Unlike the damages cap at issue in *Horton*, even viewing Oregon's workers' compensation law and tort claims act as a single, "comprehensive statutory scheme," there is no indication that the legislature intended to give those who were stripped of their common-law remedy by ORS 30.265(6)(a) "something that they would not have had if the state had not partially waived its immunity" or "something that they would not have had if" the legislature had not created a system of no-fault workers' compensation insurance. *See Horton*, 359 Or at 221-22.[19] Instead, all persons subject to the immunity provision in ORS 30.265(6)(a) are deprived of the right to recover the full measure of their economic damages, or any part of their noneconomic damages, even though Oregon's workers' compensation law expressly preserves that right for workers injured by negligent third parties who are *not* public employees.

Although the state suggests that the benefit conferred to other persons by the Tort Claims Act—assurance that "a solvent defendant will be available to pay any damages up to $3,000,000," *Horton*, 359 Or at 222—might count as a quid pro quo for the denial of any common-law remedy to persons covered by workers' compensation law, we disagree. The notion that the legislature would confer a benefit to negligently injured persons generally but eliminate a common-law remedy for negligently injured workers in particular is not "a *quid pro quo* as that term is used in *Horton*." *See Busch*, 366 Or at 651. As we explained in *Busch*, the benefits that the legislature intended to confer in exchange for the cap on noneconomic damages—reduced insurance costs and improved insurance availability—were not a quid pro quo because they were "benefits that are intended to inure

---

[19] When looking for the reasons for the legislature's departure from the common law, this court has considered the substance of the legislative provisions as well as legislative history. *Busch*, 366 Or at 651; *Horton*, 359 Or at 223. In this case, neither party has identified legislature history in the Tort Claims Act that provides additional insight into the reasons for the immunity created under ORS 30.265(6)(a).

to society in general as opposed to injured persons in particular." *Id.* at 648- 651; *see Horton*, 359 Or at 222-23 (citing *Mattson*, 39 Or at 580, for the proposition that the "legislature could immunize cities consistently with Article I, section 10, as long as the injured plaintiff has a remedy against a city employee").[20] We reiterated that a quid pro quo has not always been "necessary, or even sufficient, to sustain such a statute against a remedy-clause challenge," *Busch*, 366 Or at 650, but that "[t]he failure to provide a *quid pro quo* to counterbalance a plaintiff's right to a remedy under Article I, section 10, strikes a real blow to the defense of" the damages cap at issue in that case, *id.* at 651.

Also unlike the $3 million damages limitation that we evaluated in *Horton*, we can identify no legislative "effort to accommodate the interests of injured persons" whose common-law remedy has been eliminated under ORS 30.265(6)(a), and there is no indication that those interests have been accommodated in the way that was persuasive to us in *Horton*. *See Busch*, 366 Or at 643. As *Busch* explains, in describing the legislature's "effort to accommodate the interests of injured persons," *Horton* "relied on the legislature's recognition that the prior tort claim limit of $200,000 was 'vastly inadequate' and its assessment of actuarial data to determine how to raise the limit to 'provide a complete recovery in many cases' and 'greatly expand the state's liability in the most egregious cases.'" *Id*. (quoting *Horton*, 359 Or at 223). We do not suggest that an Article I, section 10, challenge will stand or fall on how the legislature debates a modification to common-law remedies, but *Horton* illustrates that a legislative "effort to accommodate the interests of injured persons"—and some measure of success in that effort—plays an important role in providing the "heft" necessary to persuade us that the legislature has not exceeded the substantive limits that Article I, section 10, imposes on its authority to modify common-law remedies. *Busch*, 366 Or at 643. We cannot ignore *Horton*'s caution that the legislature's effort to realistically "accommodate the interests of

[20] The state draws a contrary meaning from our observation in *Hale* that the general provisions of the Tort Claims Act "may work to the disadvantage of some, while it will work to the advantage of others." 308 Or at 523. But the observation was in reference to the benefit that was conferred on the *same plaintiffs* on whom the burden of a damage cap had been imposed.

injured persons" when setting the $3 million damages cap allowed the limitation to survive a remedy clause challenge in a way that the $200,000 damages cap originally set by the Tort Claims Act likely would not have. *See* 359 Or at 224 n 28 (observing that "we doubt highly that the 'paltry fraction' that previously was available under the Tort Claims Act would have been sufficient to constitute a substantial remedy").

Unlike the legislature's effort to craft the damages cap of the Tort Claims Act, in the context of eliminating the remedy of a common-law negligence action for individuals covered by any workers' compensation law, there is no indication that the legislature considered whether the "substitute" remedy—benefits available under workers' compensation laws—would "provide a complete recovery in many cases." *See Horton,* 359 Or at 223. More significantly, it could not have reached that conclusion, because Oregon's workers' compensation law provides no compensation for the noneconomic loss that is part of the common-law remedy the legislature eliminated.

In *Busch*, we concluded that even the partial limitation on noneconomic damages exceeded the legislature's authority to modify the common-law remedy. In doing so, we emphasized that "the legislative history does not indicate that, when the legislature capped plaintiffs' noneconomic damages at $500,000, it did so, again as the legislature did when it adopted the Oregon Tort Claims Act, with the goal of capping noneconomic damages at a sum capable of restoring the right that had been injured in many, if not all, instances, and would remain capable of doing so over time." *Busch*, 366 at 651. Although the legislature's reason from departing from the common law, here, may have been the same reason that we identified in *Horton*, that interest in extending immunity to state employees while also protecting its sovereign immunity, untethered from a corresponding effort to "provide a complete recovery in many cases" or "greatly expand the state's liability in the most egregious cases" fails to supply a reason sufficient to counterbalance the much greater interference that ORS 30.265(6)(a) does to the substantive right that Article I, section 10, grants.

## IV. CONCLUSION

As we emphasized regarding the cap on noneconomic damages in *Busch*, we are unable to conclude that the legislature's reasons for choosing to entirely eliminate a common-law remedy for persons subject to ORS 30.265(6)(a) provides the "heft" needed "to counterbalance the substantive right that Article I, section 10, grants." *See* 366 Or at 650. We, thus, hold that ORS 30.265(6)(a) cannot be applied constitutionally to deny entirely the remedy of recovery through a common-law negligence action to persons who are injured on the job by negligent state employees—at least when those persons are privately employed. Although the Court of Appeals did not reach plaintiff's argument that the trial court incorrectly made the state the sole defendant under ORS 30.265(3), our holding today makes that assignment of error irrelevant because ORS 30.265(6)(a) both retains sovereign immunity for the state and grants immunity to the individuals.[21] Accordingly, we remand the case to the trial court for further proceedings.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.,** dissenting.

I would affirm the trial court and the Court of Appeals. In this case, plaintiff alleges a single injury that occurred in the course of his employment, for which he received a workers' compensation remedy. Plaintiff would like to sue individual state employees for their role in the accident and hold the state vicariously liable, but the Oregon Tort Claims Act (OTCA) bars those claims because plaintiff is covered by workers' compensation. ORS 30.265(6)(a). The majority concludes that that result is unconstitutional because it deprives plaintiff of a remedy in violation of Article I, section 10, of the Oregon Constitution. I respectfully disagree. Plaintiff received a substantial remedy in the

---

[21] The state agrees that, *if* the immunity granted by ORS 30.265(6)(a) violates the remedy clause, the reason is the immunity extended to the individual defendants, and, "[i]n that circumstance, plaintiff would be entitled to pursue a remedy against those individual defendants, notwithstanding any substitution requirement in the" Tort Claims Act.

form of workers' compensation, which this court has previously recognized to be an adequate substitute for remedies that existed at common law.

This case concerns the operation of both the workers' compensation law and the OTCA. As the majority acknowledges, although the two statutory schemes were enacted at different times, this court should approach the remedy clause analysis as if the statutes had been enacted together as part of a comprehensive legislative solution to issues concerning (1) the public interest in ensuring that workers receive compensation for workplace injuries, and (2) the state's own interest in sovereign immunity and limiting the liability of itself and its employees in damages. 374 Or at 718 (assuming that "the legislature can accomplish through multiple legislative enactments any modification of the common law that it could accomplish in a single enactment").

In brief, as explained more fully in the majority opinion, the workers' compensation system provides the exclusive remedy against the employer for injuries suffered on the job. 374 Or at 712-13; *see* ORS 656.018 (describing workers' compensation benefits as an exclusive remedy). The OTCA grants a limited waiver of the state's sovereign immunity for tort actions, up to a specified cap on damages, and provides that the state will indemnify state employees in tort but caps their liability at the amounts that apply to actions against the state. ORS 30.260 - 30.300. The OTCA further provides that the state and its employees are immune from suit by persons covered by workers' compensation law. ORS 30.265(6)(a). In cases like this one, where a worker in private employment is injured by the alleged negligence of a state employee, the statutory scheme has the following effects, as succinctly summarized by the Court of Appeals:

> "At common law, a nonstate employee injured by the alleged negligence of the state employee could file a tort action seeking damages from the individual state employee and, as a practical matter, could recover those damages if the state employee had the resources to pay them. Sovereign immunity barred the injured individual from recovering damages against the state. Under the current statutes,

a nonstate employee injured by the alleged negligence of a state employee receives workers' compensation benefits if the injury is covered by the workers' compensation law and cannot sue the individual state employees. As was the case at common law, such an individual still cannot recover damages from the state. If the workers' compensation law does not cover the injury, then the individual has a tort remedy against the state, rather than the individual employees, a remedy not available at common law. Setting aside the potential application of some other form of immunity, the net result of the legislative choices is that every person injured by the tortious conduct of a state employee has some form of remedy designed to ensure some form of compensation, whether it be workers' compensation or tort remedies against the state, up to the damages caps."

*Crandall v. State of Oregon*, 328 Or App 452, 460, 538 P3d 212 (2023).

As a product of the statutory scheme just described, plaintiff received a workers' compensation remedy for his injury in this case. His remedy clause challenge therefore faces at least two significant obstacles. First, he suffered a single injury—and he received a remedy for it. Textually, that is all that Article I, section 10, requires ("No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man *shall have remedy* by due course of law *for injury done him* in his person, property, or reputation." (Emphases added.)) It is true that, under the workers' compensation system, a worker is limited to partial recovery for economic damages; noneconomic damages are not available, as they would be in tort if not for the exclusive-remedy limitation in the workers' compensation law. 374 Or at 719. That is why plaintiff seeks the *additional* remedy of noneconomic damages against the state employees. But, unless the court is prepared to use those limitations to cast doubt on the "substantiality" of workers' compensation remedies in general—a step that the majority does not take, and which would be extraordinary given the long history of that system—then it seems to follow, as the Court of Appeals concluded, that the remedy which plaintiff received for his injury is substantial and therefore constitutionally sufficient.

The second problem for plaintiff's argument is that, even putting aside the substantiality of the workers' compensation remedy itself, plaintiff's inability to sue the state employees for additional damages is the product of a comprehensive legislative scheme that embodies the very sort of quid pro quo that this court has previously recognized as a justification for departing from the common law. *See, e.g.,* *Horton v. OHSU*, 359 Or 168, 222-23, 376 P3d 998 (2016) (applying the concept of a quid pro quo as relevant in upholding a cap on damages in the OTCA). As a result of the workers' compensation law and the OTCA, plaintiff and others in his position lost the ability to sue individual state employees for negligence, but they gained the certainty of recovery through the no-fault system of workers' compensation. Again, it is difficult to improve on how the Court of Appeals summarized the matter:

> "Here, plaintiff has a remedy for this injury; the legislature has ensured that a person in plaintiff's position has a workers' compensation remedy. Beyond that, it is worth observing that as a result of the legislative choices made in both the Workers' Compensation Act and the OTCA, plaintiff's remedy for his injury, although different from what it would have been at common law, is more certain. As noted, at common law, plaintiff would have been limited to tort remedies against the individual—possibly judgment-proof—state employees and, potentially, a tort remedy against his employer, if his employer's negligence played a role in the injury. Because of the state's sovereign immunity, plaintiff would not have been able to seek a remedy against the state. As in any tort case, whether and to what extent plaintiff would recover damages would be uncertain. By contrast, the current legislative scheme assures that plaintiff has a certain remedy for his injuries in the form of worker's compensation benefits."

*Crandall*, 328 Or App at 463. Thus, as the Court of Appeals recognized—and as this court noted in *Horton*—the "loss" under the OTCA of an individual's right to sue state employees for negligence must be measured against the reality that most such state employees would lack the ability to pay a significant damages award. *See Horton*, 359 Or at 222 (noting that "the [OTCA] ensures that a solvent defendant will be available to pay any damages up to $3,000,000—an

assurance that would not be present if the only person left to pay an injured person's damages were an uninsured, judgment-proof state employee").

Both because the workers' compensation remedy is a substantial one in its own right, and because the immunity afforded state employees under ORS 30.265(6)(a) is part of a comprehensive legislative solution that ensures that all persons injured on the job—including by the state or its employees—will have access to either tort or statutory remedies in a manner that did not exist at common law, I would conclude that ORS 30.265(6)(a) is constitutional.

The majority's contrary conclusion rests, in my view, on two analytical flaws. First, the majority too quickly rejects the state's argument that the remedy clause challenge fails here because the workers' compensation remedy is substantial in its own right. 374 Or at 712-13. The majority reasons that the remedy afforded to plaintiff by the workers' compensation system is, at most, "relevant," but that it cannot by itself resolve the question of whether ORS 30.265(6)(a) violates Article I, section 10. 374 Or at 717, 718. For that proposition, the majority cites this court's admonition that the substantiality of a remedy cannot be determined solely by a dollar amount. 374 Or at 713; *Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 644, 468 P3d 419 (2020) (substantiality "is not determined solely, or even significantly, by calculating the difference between the damages awarded by a jury and the award permitted by statute and making a judicial assessment of whether the two are so disparate that some adjectival label (substantial or insubstantial, paltry or emasculated) applies").

The state, however, is not asking for the sort of comparison that *Busch* warned against. I have no disagreement with the statement in *Busch*, but I think the majority misses the point. The workers' compensation remedy is substantial for purposes of Article I, section 10, not because the dollar amounts that plaintiff received achieve some threshold level of objective sufficiency, but because the legislature has provided something meaningful and entirely different than what existed at common law: a guarantee to injured workers that compensation will be available without the

need to prove fault. *See* ORS 656.012 (establishing the workers' compensation system to provide benefits and medical care regardless of fault). A hypothetical litigant *could* try to argue in a particular case that the workers' compensation remedy, though guaranteed, is nonetheless monetarily inadequate under Article I, section 10, but plaintiff in this case does not make that argument (he has explicitly disavowed it), nor does the majority. In the absence of such an argument, the guidance from *Busch* has limited value here. In that case, the legislature had left the nature of the common law damages remedy intact and had simply slashed it to an amount that was a small fraction of the plaintiff's damages, *Busch*, 366 Or at 650-51; here, the legislature has effected a complete substitution of remedies.

The majority's second and related error, in my view, is to downplay the nature of the quid pro quo that the statutory scheme reflects. The majority acknowledges that all of the considerations that this court cited in *Horton* as legitimate reasons for the legislature's enactment of the OTCA damages cap also provide support for the immunity conferred in ORS 30.265(6)(a). 374 Or at 722 ("We accept the state's proposition that the interests that motivated the legislature to adopt the modified common-law remedy under scrutiny in *Horton* also motivated the legislature to adopt the complete immunity at issue here."). At the same time, as I understand its reasoning, the majority distinguishes *Horton* on the ground that, in this case, the legislature has provided no "accommodation" to persons in plaintiff's situation to make up for what ORS 30.265(6)(a) takes away. 374 Or at 723 ("No legislative enactment accommodates that substantial, additional departure from the common-law remedy."). That assertion can be true only if one ignores the fact that the immunity conferred on state employees by ORS 30.265(6)(a) is *expressly conditioned* on the availability of the workers' compensation remedy. The majority concedes that the text of the provision shows that the legislature "assumed" that the workers' compensation remedy would be available, 374 Or at 723—which understates the quid pro quo that the statute embodies. One is prevented from pursuing tort claims against state employees only if one is

covered by the workers' compensation remedy that the state has created.

What appears to drive the majority's conclusion is a perceived inequity arising from the fact that workers in plaintiff's position generally may receive workers' compensation benefits *and* pursue tort remedies against third parties who contributed to the injury, and that ORS 30.265(6)(a) precludes such tort remedies only because the allegedly negligent actor is an employee of the state. And, in the majority's view, ORS 30.265(6)(a) removes the right to pursue those actions against state employees without providing any "additional" benefit that workers did not already have under the workers' compensation system. 374 Or at 723.

It is true that the statutory scheme places workers who are injured by the negligence of state employees in an inferior position relative to workers who are injured by anyone else, but the remedy clause has not, until now, been understood to contemplate that sort of comparative exercise. Moreover, the fact that ORS 30.265(6)(a) results in some disparate treatment is not a fact that can be considered in a vacuum; it must be considered as part of the comprehensive statutory scheme that the legislature has provided through the workers' compensation law and the OTCA. The proper question, in other words, is not whether ORS 30.265(6)(a) provided something new or additional in exchange for removing a worker's right to sue state employees. As the majority elsewhere points out, we must assume that the legislature may constitutionally enact over time, in multiple sessions, what it could enact all in one session. 374 Or at 723. If so, the fact that the workers' compensation law and the OTCA were enacted in different decades cannot be what drives the constitutional analysis. It follows that any effort to seek something new or additional, beyond the workers' compensation remedy itself, to justify the immunity found in ORS 30.265(6)(a) is misguided. The workers' compensation law and OTCA, in their totality, reflect the legislature's accommodation of multiple competing interests, of which ORS 30.265(6)(a) is just one component. Accordingly, the question reduces to whether, in light of the state's strong interest in limiting the liability of itself and its employees,

the legislature could permissibly include the immunity in ORS 30.265(6)(a) as part of the quid pro quo that gives rise to the guaranteed remedies provided by the workers' compensation law. Because I believe the answer to that question is yes, I respectfully dissent.

Duncan, J., joins in this dissenting opinion.